JOHN R. BLACKBURN v. PATRICK REILLY.

The Circuit Court, after affirmance of its judgment in the Court of Errors, and after the record has been remitted in the usual form, has the power to stay execution of the judgment, and to hold it for the purpose of setting it off against a counter judgment.  The mandate from the higher court does not affect the power of the Circuit Court to control the judgment for the equitable purpose of set-off.

On case certified from the Essex Circuit Court.

Argued at November Term, 1885, before Justices DEPUE and VAN SYCKEL.

For the plaintiff, *Joseph Coult.*

For the defendant, *Fred. W. Stevens.*

The opinion of the court was delivered by

VAN SYCKEL, J.    This action was instituted in the Essex Circuit Court to recover damages for the refusal of Reilly to

Blackburn v. Reilly.

accept a portion of fifty-two car loads of bark, under an alleged contract between the parties, to be delivered at the rate of one car load each week.

On the trial of the cause the defendant desired to recoup his damages by reason of the unmerchantable quality of the bark which had been delivered before suit brought, but he had given no notice to that effect, and was not prepared with his evidence at the time.

The court proceeded with the suit, saying that the execution (if the plaintiff prevailed) would be stayed to answer any judgment which the defendant might afterwards recover from the plaintiff. To this the plaintiff consented.

The plaintiff recovered a judgment against Reilly for $1140.43, upon which a writ of error was sued out in the Court of Errors and Appeals, and the judgment was there affirmed at June Term, 1885, and the record remitted to the Essex Circuit July 31st, 1885. In the meantime Reilly prosecuted in the Essex Circuit Court a suit against Blackburn for his damages claimed as aforesaid.

After this suit was noticed for trial, Blackburn caused it to be removed to the United States Circuit Court for the District of New Jersey, where it is still pending.

In August, 1885, Reilly applied to the Essex Circuit for a stay of the execution against him, which was granted upon terms that he pay into said court the amount due on the judgment.

The money having been paid into court, Blackburn applied for a rule allowing him to take the money out of court, and the Circuit Court, being in doubt, certified to the Supreme Court for its advisory opinion on the question whether the Essex Circuit Court, after affirmance of its judgment in the Court of Errors, and after the record has been remitted in the usual form, can stay execution of such judgment, and hold the same to answer a claim which the defendant in execution is prosecuting against the plaintiff as above stated.

The contention of the plaintiff is that the *remittitur* from the Court of Errors is the only guide the Circuit Court can

have; that it contains the judgment of the court of last resort, and that execution must issue according to the mandate of the higher court.

The mandate of the Court of Errors is substantially the same in form as that of the Supreme Court of the United States.

The plaintiff relies upon *West* v. *Brashear*, 14 *Peters* 52, and *Sibbald* v. *United States*, 12 *Peters* 487, to support his position.

The doctrine of these cases that whatever was before the superior court, and there disposed of, must be regarded as finally settled, and that the inferior court cannot review or interfere with any matter decided on the appeal, or give other or further relief in that respect, must be conceded to be a correct exposition of the law.

It must also be admitted that the Circuit Court has no power to reverse or annul its own final judgment for errors of law or fact, after the term in which it has been rendered, unless for clerical mistakes in the entry.

But the plaintiff must establish the more advanced position that after *remittitur* the Circuit Court is constrained to issue execution, and cannot control the judgment, as in other cases, for the equitable purpose of setting it off against a judgment at that time held by the defendant against the plaintiff. If this cannot be successfully maintained the argument is without force.

When the plaintiff's judgment was recovered, and before its removal by writ of error, the law of the state unquestionably was that the Circuit Court could have ordered it to be set off against any judgment then held by the defendant against the plaintiff. *Brown* ads. *Hendrickson*, 10 *Vroom* 239; *McAdams* v. *Randolph*, 13 *Vroom* 332; *Brookfield* v. *Hughson*, 15 *Vroom* 285; *Schantz* v. *Kearney*, 18 *Vroom* 56.

The practice, I think, is also well settled, that the Circuit Court can control its own judgment and stay execution, to enable a defendant to recover his counter claim, and set it off, that full justice may be done.

Are these rights lost to the defendant through deprivation of the power of the Circuit Court consequent upon the affirmance of its judgment by the court of last resort?

The judgment of the Court of Errors was simply a judgment of affirmance. No execution can issue out of the Court of Errors. The record is remitted, and the judgment stands henceforth as an unappealable judgment of the Circuit Court.

How can affirmance deprive the inferior court of any power which, by established practice, it exercises over its final judgments, and which does not impeach their finality.

How does it impair the general power of the court below?

How can the fact that the Circuit Court was right in its judgment serve to degrade its authority in this case. The judgment after affirmance has all the attributes of a final judgment, nothing more. It has no higher qualities than a final judgment unappealed from, except that its validity cannot be questioned or reviewed.

The only question adjudged in the appellate court was that in the record and proceedings below no error appeared.

The rule requiring judgments to be set off is the law of the state. It is binding upon all our courts, the Court of Errors equally with the Circuit Court. If, according to our practice, application could be made to the court of last resort, on affirmance, to set off a counter judgment, that court could not refuse to do so. Its mandate cannot be construed as a prohibition to the court below to apply the law in this instance.

The Circuit Court being the proper forum in which the defendant must apply for relief, there is nothing in the *remittitur* which can operate to extinguish this control with which the law invests the Circuit Court over final judgments.

This in nowise impeaches the judgment, it is recognized as final and conclusive, and the court deals with it as such.

There is no higher right to execution because the judgment has been affirmed.

The right to execution is inherent in the judgment final, as well before as after affirmance, and is as dominant in the one case as in the other.

If, before the *remittitur* came down, the defendant had advanced the plaintiff a sum of money equal to the judgment debt, under a contract that if the judgment was affirmed it should be applied to its extinction, otherwise to be refunded, could it be maintained that the Circuit Court would be constrained by the exigency of the mandate of the higher court to issue execution on the judgment?

What matters it, whether it is a payment, which by contract between the parties is to be applied in discharge of the judgment, or a payment applied by operation of law in conformity with established legal principles?

In either case it would be necessary for the court to sit in judgment on the facts constituting the right to make such appropriation.

I cannot on principle distinguish the two cases.

The force of the *remittitur* is not therefore to restrict the Circuit Court to the single duty of sending execution upon the judgment affirmed.

The judgment is remitted to the Circuit Court to be proceeded with according to such established rules and practice as pertain with respect to final judgments irreversible in that court.

If Reilly recovers judgment against Blackburn in the suit which has been removed to the federal court, the application to set off that judgment against the judgment which has been affirmed must be made to the Essex Circuit Court.  *Brookfield* v. *Hughson,* 15 *Vroom* 285.

Therefore the removal of the Reilly suit cannot impair the power of the Circuit Court to control its judgment for the equitable purpose of set-off.

The question certified is answered affirmatively.